UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GREGORY VINCENT,

    *Plaintiff*,

    v.

JONATHAN P. MARONEY, HCCF-2, LLC
HARBOR CITY CAPITAL CORP and
HARBOR CITY DIGITAL VENTURES,
INC.,

    *Defendants.*

Case No.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff GREGORY VINCENT ("Plaintiff" or "Mr. Vincent"), by and through his undersigned attorney, and hereby complains and alleges against the above-named Defendants, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

## PARTIES

1. At all times relevant, Plaintiff was and still is a citizen of the State of California, residing in Marin County, California.

2. At all times relevant, Defendant JONATHAN P. MARONEY ("Mr. Maroney") was and still is a citizen of the State of Florida residing in Melbourne, in Brevard County, Florida.

1

3. At all times relevant, Defendant HCCF-2, LLC ("HCCF-2") was a domestic Nevada limited liability company bearing entity number E01640720199, having its principal office at 100 Rialto Place, Melbourne, FL 32901 in Brevard County, Florida.

4. Defendant HCCF-2 sometime during 2020 entered into and remains in a "revoked" status regarding its Nevada entity filing under number E06225120143.

5. At all times relevant, Defendant HARBOR CITY CAPITAL CORP ("Harbor Capital") was and still is an active domestic Nevada limited liability company, bearing entity number E06215920140, which was and still is wholly owned, operated, managed, maintained and/or controlled by Mr. Maroney, having its principal office at 100 Rialto Place, Melbourne, FL 32901 in Brevard County.

6. At all times relevant, Defendant HARBOR CITY DIGITAL VENTURES, INC ("Harbor Digital") was a domestic Nevada limited liability company bearing entity number E04115520175, having its principal office at 100 Rialto Place, Melbourne, FL 32901 in Brevard County, Florida.

7. Defendant Harbor Digital sometime during 2020 entered into and remains in a "revoked" status regarding its Nevada entity filing under number E04115520175.

8. Defendant HCCF-2 was a sole member/managed and/or manager/managed LLC wholly owned, operated, managed, maintained and/or controlled by Mr. Maroney directly and/or through Defendants Harbor Capital and Harbor Digital.

9. At all times relevant, Mr. Maroney formed Defendants HCCF-2, Harbor Capital and Harbor Digital as his "alter egos" with himself as the sole LLC member/manager (HCCF-2) or sole shareholder (Harbor Capital and Harbor Digital) for purposes of abusing the "LLC" and "corporate" forms to conduct an illegal and fraudulent Ponzi scheme, as hereinafter alleged.

10. Pursuant to Nevada Revised Statutes section 86.505, Defendants HCCF-2 and Harbor Digital can be held liable, jointly and severally, for damages in this action despite their "revoked" status.

## JURISDICTION AND VENUE

11. This is an action for money damages. The claim for money damages in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and otherwise raises claims under federal securities laws.

12.     Diversity jurisdiction exists pursuant to 28 USC §1332(a) and (b), and federal question jurisdiction exists pursuant to 28 USC §1331 because an implied private right of action for damages under section 10(b) and rule 10b-5(b) of the 1934 Securities Exchange Act is made.

13.     Venue is within the Middle District of Florida, pursuant to 28 USC §1391, because a substantial part of the events or omissions giving rise to the causes of action occurred in Melbourne, Brevard County, Florida.

## FACTUAL ALLEGATIONS

14.     In May 2019, Plaintiff watched and listened to videos on the internet, and read documents provided on the internet, that were made and/or promoted by Mr. Maroney and Defendants HCCF-2, Harbor Capital and/or Harbor Digital in which _"high-yield, secured bonds"_ were offered as _"investments"_ and a source of _"retirement income,"_ which were as _"safe as a CD,"_ _"100% secured by a cash asset-backed instrument issued by a major top-tiered bank, which ensures the return of principal,"_ and which were followed up with emails sent to Plaintiff that reaffirmed the foregoing with _"returns of between ONE (1%) PERCENT to ONE AND ONE-HALF (1.5%) PERCENT per month, with fixed terms and the return of the entire principal at the end of a term,"_ which purportedly were to be used to provide _"bridge funding"_ for Mr. Maroney's commercial _"lead generation businesses,"_ including Harbor City and related companies.

4

15. Plaintiff thereafter electronically signed and accepted an offer in the form of a subscription purchase contract on May 29, 2019, for his "investment" of Four Hundred Thousand ($400,000) Dollars, which bore the signature of Mr. Maroney, dated May 28, 2019, as the Manager of HCCF-2, LLC). *See 18% High Yield Bonds Subscription Agreement*, appended hereto as Exhibit 1.

16. The securities, which were in fact unregistered and illegal under federal securities laws, were promoted by Mr. Maroney through his abuse of the LLC and corporate form of business organization of Defendants Harbor Capital, HCCF-2 and Harbor Digital, all of which he wholly owned individually and/or through another of his wholly owned businesses, in an effort to escape his individual liability for <u>intentionally and knowingly making false and misleading past and present statements of material fact to induce members of the public, including Plaintiff , to purchase the promoted "investment securities" knowingly full well that they, and Plaintiff , would rely upon them.</u>

17. For a period time, Plaintiff received what he believed at the time were monthly "interest" payments, which he had no reason to suspect or know resulted from Mr. Maroney's Ponzi scheme through the co-defendants and his other companies that used "invested funds" of "subscription purchasers" to make the "interest" payments, while misappropriating and converting approximately

ninety-five (95%) percent of the approximately Seventeen Million ($17,000,000) Dollars of collected "invested funds" for, among other things, his personal use, his wife's personal use, and "interest" payments to subscribers as part of the Ponzi scheme.

18. Other than receiving one late monthly payment for October 2019, which was paid in November 2019, Plaintiff received monthly payments until in or about May, 2021, at which time he learned that Harbor City's assets had been frozen as a result of a Temporary and/or Preliminary Injunction obtained by the United States Securities and Exchange Commission against JONATHAN P. MARONEY and his companies, including HARBOR CITY, HCCF-2 and HARBOR DIGITAL, in a suit for securities fraud and various forms of relief, including disgorgement.

19. The SEC's civil suit was commenced with the electronic filing of its Complaint on April 20, 2021, in the United States District Court for the Middle District of Florida under Case No. 6:21-CV-694-CEM-DCI.

20. The SEC's Complaint and the allegations therein are publicly viewable at the footnoted link.[1]

---

[1] https://www.sec.gov/litigation/complaints/2021/comp-pr2021-74.pdf (last visited July 16, 2021).

## COUNT I
## FRAUD IN THE INDUCEMENT
**(Against all Defendants)**

21. Each of the allegations set forth in paragraphs 14 through 18, inclusive, are hereby incorporated by this reference as if realleged fully herein.

22. Plaintiff watched videos on the internet, and read documents provided on the internet, that were made and/or promoted by Mr. Maroney and Defendants HCCF-2, Harbor Capital and/or Harbor Digital in which _"high-yield, secured bonds"_ were offered as _"investments"_ and a source of _"retirement income,"_ which were as _"safe as a CD,"_ _"100% secured by a cash asset-backed instrument issued by a major top-tiered bank, which ensures the return of principal,"_ and which were followed up with emails sent to Plaintiff that reaffirmed the foregoing with _"returns of between ONE (1%) PERCENT to ONE AND ONE-HALF (1.5%) PERCENT per month, with fixed terms and the return of the entire principal at the end of a term,"_ which purportedly were to be used to provide _"bridge funding"_ for Mr. Maroney's commercial _"lead generation businesses,"_ including Harbor City and related companies.

23. At all times relevant, these statements of fact were known by Mr. Maroney and by his wholly owned co-defendants to be false and misleading, and

7

were intentionally made to induce members of the public, including Plaintiff, to rely upon them in what was a concealed and illegal Ponzi scheme.

24. At all times relevant, Plaintiff reasonably and justifiably relied upon the Defendants' intentionally false and misleading statements of fact to his detriment by executing the subscription contract. *See Exhibit 1.*

25. By reason of the foregoing, Plaintiff has sustained monetary damages in excess of $400,000, including his contractual payment, loss of past and future interest and/or earnings had he retained his contractual payment, and other monetary damages including punitive damages.

## COUNT II
## BREACH OF CONTRACT
**(Against all Defendants)**

26. Each of the allegations set forth in paragraphs 14 through 18, inclusive, are hereby incorporated by this reference as if realleged fully herein.

27. By reason of the foregoing, Defendants breached the contract and the implied duty of good faith and fair dealing.

28. At all times relevant, Plaintiff performed all of the terms and conditions of the contract on his part to be performed.

29. Mr. Maroney's conduct by and through Harbor Capital, HCCF-2 and/or Harbor Digital constituted an abuse of the LLC and corporate form in an

8

effort to avoid his individual liability to pay any judgments against them as a result of his Ponzi scheme, which he cannot avoid as a matter of law under Florida common law ("piercing the corporate veil") and Nevada Revised Statutes §78.747 (Liability of another person for debt or liability of corporation) and §86.376 (Liability of person who acts as alter ego of company for debts or liabilities of company).

30. Plaintiff is entitled to "pierce the corporate veil" and hold Mr. Maroney individually liable for any monetary judgments obtained against Defendants Harbor Capital, HCCF-2 and/or Harbor Digital.

31. By reason of the foregoing, Plaintiff has sustained monetary damages in excess of $400,000, including his contractual payment, loss of past and future interest and/or earnings had he retained his contractual payment, and other monetary damages including punitive damages.

### COUNT III
### SECURITIES FRAUD UNDER SECTION 10(b) AND RULE 10b-5(b) OF THE 1934 SECURITIES EXCHANGE ACT
**(Against all Defendants)**

32. Each of the allegations set forth in paragraphs 14 through 18, inclusive, are hereby incorporated by this reference as if realleged fully herein.

33. The "subscription contracts" were promoted, offered and/or sold to members of the public, including Plaintiff, as "investment bonds" and, therefore,

by operation of law, were "securities" as defined in the 1933 Federal Securities Act under 15 USC §77b(a)(1).

34.     Mr. Maroney, individually and/or by and through Defendants Harbor Capital, HCCF-2 and/or Harbor Digital knowingly and intentionally misrepresented to the public, including Plaintiff, that the "investment bonds" were exempt from securities laws.

35.     The misrepresentation of material facts about the "investment bonds" violated the transparency, and the promotion and sale of the "securities" otherwise violated disclosure requirements of federal securities laws.

36.     The Defendants' conduct, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails to promote, offer and/or sell the "securities."

37.     By reason of the foregoing, Plaintiff has sustained monetary damages in excess of $400,000, including his contractual payment, the loss of past and future interest and/or earnings had he not made his contractual payment, and other monetary damages including punitive damages.

///

## COUNT IV
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(Against Harbor City)**

38. Each of the allegations set forth in paragraphs 14 through 18, inclusive, are hereby incorporated by this reference as if realleged fully herein.

39. By reason of the foregoing, Plaintiff alleges that Harbor Capital used deceptive acts and/or an unfair trade practices in violation of §§501.201, et. seq. of the Florida Statutes ("FDUPTA").

40. Plaintiff is a person, as that term is defined under FDUPTA.

41. Harbor Capital's brazen marketing practices included promoting *"high-yield, secured bonds"* which were offered as *"investments"* and a source of *"retirement income,"* as were as *"safe as a CD,"* *"100% secured by a cash asset-backed instrument issued by a major top-tiered bank, which ensures the return of principal"*. Plaintiff also received emails that reaffirmed the foregoing with *"returns of between ONE (1%) PERCENT to ONE AND ONE-HALF (1.5%) PERCENT per month, with fixed terms and the return of the entire principal at the end of a term,"* which purportedly were to be used to provide *"bridge funding"* for Mr. Maroney's commercial *"lead generation businesses,"* including Harbor City and related companies.

42. Plaintiff thereafter electronically signed and accepted an offer in the form of a subscription purchase contract on May 29, 2019, for his "investment" of

11

Four Hundred Thousand ($400,000) Dollars, which bore the signature of Mr. Maroney, dated May 28, 2019, as the Manager of HCCF-2, LLC. *See Exhibit 1.*

43. The securities, which were in fact unregistered and illegal under federal securities laws, were promoted by Mr. Maroney through his abuse of the LLC and corporate form of business organization of Defendants Harbor Capital, HCCF-2 and Harbor Digital, all of which he wholly owned individually and/or through another of his wholly owned businesses, in an effort to escape his individual liability for <u>intentionally and knowingly making false and misleading past and present statements of material fact to induce members of the public, including Plaintiff , to purchase the promoted "investment securities" knowingly full well that they, and Plaintiff , would rely upon them.</u>

44. For a period time, Plaintiff received what he believed at the time were monthly "interest" payments, which he had no reason to suspect or know resulted from Mr. Maroney's Ponzi scheme through the co-defendants and his other companies that used "invested funds" of "subscription purchasers" to make the "interest" payments, while misappropriating and converting approximately ninety-five (95%) percent of the approximately Seventeen Million ($17,000,000) Dollars of collected "invested funds" for, among other things, his personal use, his

wife's personal use, and "interest" payments to subscribers as part of the Ponzi scheme.

45. Other than receiving one late monthly payment for October 2019, which was paid in November 2019, Plaintiff received monthly payments until in or about May, 2021, at which time he learned that Harbor City's assets had been frozen as a result of a Temporary and/or Preliminary Injunction obtained by the United States Securities and Exchange Commission against JONATHAN P. MARONEY and his companies, including HARBOR CITY, HCCF-2 and HARBOR DIGITAL, in a suit for securities fraud and various forms of relief, including disgorgement.

46. Harbor Capital's brazen marketing practices were also intended to induce unwitting persons, such as Plaintiff, to invest in its business. Harbor Capital's false and misleading misrepresentations were intentionally made to induce members of the public, including Plaintiff, to rely upon them in what was a concealed and illegal Ponzi scheme.

47. Plaintiff reasonably and justifiably relied upon the Defendants' intentionally false and misleading statements of fact to his detriment by executing the subscription contract, thus constituting Harbor Capital's deceptive acts and/or

an unfair trade practices in violation of §§501.201, et. seq. of the Florida Statutes FDUPTA.

48.     Such actions and unfair trade practices are the proximate cause of damages of Plaintiff's damages.

49.     Plaintiff suffered actual damages as a result of Harbor Capital' violations of FDUPTA.

50.     Section 501.2105 of FDUPTA provides for the payment of the prevailing party's attorneys' fees and costs in a civil action by the non-prevailing party.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against the Defendants, Mr. Maroney, Harbor Capital, HCCF-2 and Harbor Digital, jointly and severally, for (i) general and compensatory damages and/or restitution in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); (ii) punitive damages for intentional fraud in the inducement and/or for violating federal securities laws in doing so

(iii) interest, costs, disbursements and applicable attorney's fees; and (iii) further relief as justice requires.

Dated this 20th day of July, 2021.

> Respectfully submitted,
>
> */s/ Christopher J. Brochu*
> Christopher J. Brochu, Esq.
> Florida Bar No.: 1013897
> **BROCHU LAW, PLLC**
> One Call Tower
> 841 Prudential Dr., Suite 1200
> Jacksonville, FL 32207
> Telephone: (904) 201-1771
> Facsimile: (904) 429-4219
> c.brochu@brochulaw.com
>
> **THE BACH LAW FIRM, LLC**
> JASON J. BACH, ESQ.
> (*Pro Hac Vice Pending*)
> Nevada Bar No. 7984
> 7881 W. Charleston Blvd., Suite 165
> Las Vegas, Nevada 89117
> Telephone: (702) 925-8787
> Facsimile: (702) 925-8788
> jbach@bachlawfirm.com
>
> *Attorneys for Plaintiff Gregory Vincent*